**STATE of Maine**

v.

**Michael J. ALBERT.**

Supreme Judicial Court of Maine.

Argued April 29, 1980.

Decided Aug. 20, 1980.

David M. Cox, Dist. Atty., Margaret J. Kravchuk, Deputy Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Julio DeSanctis, Bangor (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

The appellant, Michael J. Albert, was indicted for operating a motor vehicle on August 20, 1979, while an order of the Superior Court remained in effect declaring the appellant to be a habitual offender and prohibiting his operation of a motor vehicle. 29 M.R.S.A. § 2298 (Supp. 1979–80). Convicted after a jury trial and sentenced to six months in the Penobscot County Jail, he now appeals, raising two issues concerning his status as a habitual offender. We deny the appeal.

I.

■ On July 28, 1978, the appellant was adjudged to be a habitual offender and ordered not to operate a motor vehicle on the highways of Maine. He had failed to appear before the Superior Court at the hearing to determine whether he was a habitual offender as defined in 29 M.R.S.A. § 2272,[1] then applicable, although the Superior Court order to show cause prescribed by the former section 2276 had been duly served on him.

The appellant argues that the failure to provide him with appointed counsel in the proceeding to determine whether he was a habitual offender violated his constitutional rights guaranteed by the sixth amendment

of the Constitution of the United States and by article I, section 6 of the Constitution of Maine. At his trial in the present case, he moved that the indictment be dismissed for the asserted constitutional violations.

He contends that the rule of *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), should be applied to prohibit the use of an uncounseled habitual offender determination as the basis for a criminal conviction of operating a motor vehicle while under adjudication as a habitual offender. He supports his argument by citing cases which, he asserts, hold that it is improper for a sentencing judge to consider prior convictions that were obtained in violation of the defendant's right to counsel as defined in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Argersinger v. Hamlin, supra; United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 711, 30 L.Ed.2d 739 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). *See also State v. Day*, Me., 293 A.2d 331 (1972); *Commonwealth v. Calvert*, 463 Pa. 211, 344 A.2d 797 (1975).

Quite apart from the question whether *Argersinger* has any application to an adjudication of status as a habitual offender, which is not a judgment of conviction in a criminal proceeding, appellant's argument must fail because it involves an impermissible kind of collateral attack on the Superior Court's adjudication of defendant as a habitual offender. This aspect of the case is controlled by the rationale of *State v. Higgins*, Me., 338 A.2d 159 (1975). Though duly served with notice, the appellant failed to appear at the hearing in Superior Court, thereby foregoing his initial opportunity, by asserting his alleged indigency and his alleged right to counsel, to object to any unconstitutional governmental action directly through the available judicial process. 29 M.R.S.A. §§ 2276, 2279.[2] Also, although

---

1. Repealed by P.L. 1979, ch. 10, § 1, which replaced the former section 2272 with 29 M.R.S.A. § 2292 (Supp. 1979–80), effective March 2, 1979, amended by P.L. 1979, ch. 673, § 10.

2. Those sections, in effect when Albert was adjudged to be a habitual offender, were repealed by P.L. 1979, ch. 10, § 1, and replaced by 29 M.R.S.A. §§ 2294, 2297 (Supp. 1979–80), effective March 2, 1979.

over a year had passed since his adjudication as a habitual offender, he had not sought, either through the courts or the secretary of state, relief from that status and restoration of his license before operating a motor vehicle.[3] To permit the adjudicated habitual offender to take the law into his own hands and drive a motor vehicle on a public highway without a valid license, an act which is itself an independent crime, would be contrary to the strong policy of promoting public safety on the highways which the habitual offenders law is designed to promote. 29 M.R.S.A. § 2291 (Supp. 1979–80).[4]

In *State v. Higgins*, Me., 338 A.2d 159 (1975), a defendant charged with operating while his license was under suspension sought to attack the constitutionality of the license–suspension provisions of the implied consent statute. He had been earlier arrested for operating under the influence of intoxicating liquor, had refused to submit to chemical testing, and had been formally notified of a three–month suspension of his license, all in accordance with the statute. He had not sought a hearing before the secretary of state or a review by the Superior Court of the propriety of the suspension.

Rejecting the notion of "utter nullity ab initio" of the legislation there in question and of the suspension of the defendant's license pursuant to that legislation, we held that the defendant was not entitled to assert the unconstitutionality of the suspension provisions of the statute. In *Higgins*, the defendant asserted different constitutional rights from those asserted by defendant here, but the principle governing the two cases is similar. The rationale controlling the decision of the present case was expressed in *State v. Higgins, supra* at 164, in the following language:

In the case at bar the public interest competing against defendant's interest to vindicate a claimed constitutional right is the avoidance of the proliferation of criminality and the potential for anarchy which inheres in allowing citizens to engage in "self–help" conduct constituting an independent crime as the initial step of a collateral attack upon the constitutionality of a statute and of governmental action taken pursuant to such statute. With the contest in this posture our view is that the "practical realities" of the public interest are sufficiently weighty to overbalance the defendant's interest to achieve, by a collateral attack, the vindication of his constitutional rights–at least when, as here, the constitutional rights asserted are not of the type protected by the First Amendment to the Constitution of the United States (or counterpart provisions of the Constitution of Maine). Cf. *Poulos v. New Hampshire*, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953).

It should not be assumed from our holding that defendant may not maintain this kind of collateral attack on the habitual offender adjudication, that we agree with his basic premise that the *Argersinger* rule applied to that adjudication, which is not a criminal proceeding. The language of the opinion of the majority of the court in *Argersinger* limited the holding of that case in terms to judgments resulting in impris-

---

**3.** See discussion in Part II of this opinion of the right to relief of one adjudged to be a habitual offender under the former chapter 18 of title 29.

**4.** 29 M.R.S.A. § 2291 provides as follows:
Declaration of policy
It is declared to be the public policy of Maine:
1. *Safety.* To provide maximum safety for all persons who travel or otherwise use the public highways of the State;
2. *Privileges denied.* To deny the privilege of operating motor vehicles on these highways to persons who by their conduct and

record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the State of Maine and for the orders of Maine courts and administrative agencies; and
3. *Discourage repetition.* To discourage repeated violations by individuals and to impose increased added deprivation of the privilege to operate motor vehicles upon habitual offenders who repeatedly violate traffic laws. The former section 2271 of title 29, repealed and replaced by section 2291, contained closely similar provisions.

onment, although the concurring opinion of Powell, J., suggested that there might be non–criminal proceedings in which, because of the serious ultimate consequences, counsel ought to be constitutionally required. We intimate no opinion on that question, which we are not required by the facts of this case to decide. *Cf. Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

## II.

■ The appellant contends that he is denied equal protection of the laws by the repeal of the former habitual offender statute, chapter 18 of title 29, and the enactment of the new one, chapter 18–A. P.L. 1979, ch. 10, §§ 1 and 2. He was convicted under the old statute, which provided that after one year the habitual offender could petition the court in which he was found to be a habitual offender for restoration of his license. 29 M.R.S.A. § 2278. That section, with the remainder of chapter 18, was repealed when the legislature enacted chapter 18–A, effective March 2, 1979. One sentence of chapter 18–A, 29 M.R.S.A. § 2296, provides in part, as follows:

> At the expiration of one year from the date of the revocation under this chapter, a person whose license has been so revoked may petition the Secretary of State for relief from his habitual offender status.

The defendant asserts that chapter 18–A has the effect of permanently denying a person who was adjudged to be a habitual offender under chapter 18 any relief from his habitual offender status. He reasons that permitting the chapter 18–A habitual offender to petition the secretary of state for relief, while not granting any potential relief to the chapter 18 offender, is an unconstitutional discrimination.

We disagree with defendant's premise that the chapter 18 offender has no legal means of obtaining relief from his habitual offender status. It is obvious that the legislature did not intend to deprive chapter 18 offenders of their privilege of applying for restoration of their licenses after one year

of suspension. If the secretary of state disclaims authority to entertain an application for restoration of license by a chapter 18 offender, the Superior Court, which adjudicated him an offender, has authority under Rule 60(b) of the Maine Rules of Civil Procedure to entertain his petition for relief from the operation of its judgment. For good cause shown, the court may grant the relief, attaching such terms and conditions as it deems desirable, subject to provisions of law relating to the issuance of operators' licenses.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.