John R. PIACITELLI, Jr.

v.

Rodney QUINN, Secretary of State.

STATE of Maine

v.

John R. PIACITELLI, Jr.

Supreme Judicial Court of Maine.

Argued June 15, 1982.

Decided Sept. 3, 1982.

Nisbet, MacNichol & Ludwig, Francis M. Jackson, III (orally), South Portland, for plaintiff.

Doris A. Harnett (orally) Asst. Atty. Gen., Augusta, for Rodney Quinn.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, for the State of Maine.

Before McKUSICK, C.J., and NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

In this consolidated appeal, John Piacitelli challenges the validity of two Superior Court judgments entered below. In the civil case, plaintiff Piacitelli argues on appeal that the Superior Court, Cumberland County, erroneously granted summary

judgment in favor of the defendant, Rodney Quinn. In the criminal case, defendant Piacitelli appeals from his conviction of operating a motor vehicle while his license was revoked pursuant to his having previously been adjudged an habitual offender by the Secretary of State (29 M.R.S.A. § 2298) in Superior Court, Cumberland County, following a bench trial. We deny the appeal in both cases and affirm the judgments below.

In January and April of 1975, the Secretary of State twice suspended John Piacitelli's "license to operate a motor vehicle, right to operate a motor vehicle and right to obtain a driver's license" because Piacitelli had failed to appear in District Court on two separate occasions to answer charges for traffic violations. While the suspensions were still in effect, Piacitelli committed the offense of operating a motor vehicle after suspension (29 M.R.S.A. § 2184) on three separate occasions. Piacitelli pleaded guilty to all three offenses and was subsequently informed that he had been adjudged an habitual offender and his license was revoked.[1] In January of 1981, Piacitelli was indicted for operating a motor vehicle in violation of his habitual offender status. Before that indictment came to trial, Piacitelli filed a civil complaint in the Superior Court, Cumberland County, naming the Secretary of State as the defendant and seeking declaratory and injunctive relief on the ground that the two 1975 suspensions were invalid for lack of prior opportunity for hearing. Upon the plaintiff's motion for summary judgment, the Superior Court judge entered summary judgment in favor of the defendant in the civil case. Piacitelli was later convicted in February of 1982, following a bench trial in Superior Court, Cumberland County, of operating a motor vehicle while under revocation pursuant to the habitual offender law (29 M.R.S.A.

§ 2298). Piacitelli filed a timely notice of appeal to the Law Court in both the criminal and civil cases. Upon the motion of the appellant, the civil and criminal cases were consolidated for the purposes of this appeal.

The primary issue presented for our review in both the civil and criminal cases is whether Piacitelli can, as a matter of law, collaterally attack the validity of the 1975 suspensions by the Secretary of State after having committed, and pleaded guilty to, numerous motor vehicle offenses since 1975.[2] The thrust of Piacitelli's collateral attack is that the two 1975 suspensions are invalid because he was not afforded an opportunity for a pre-suspension hearing allegedly in violation of his constitutional rights. Because we dispose of this appeal on other grounds, we do not reach the constitutional issues raised.

This Court has previously held that a defendant charged with operating a motor vehicle after suspension (29 M.R.S.A. § 2184), who failed to directly attack the legality of the suspension at the time it was imposed, cannot raise the issue of the validity of the underlying suspension in an attempt to avoid conviction. *See State v. Higgins,* Me., 338 A.2d 159, 161 (1975). In *Higgins,* we concluded that the defendant could not raise arguments concerning the constitutionality of this state's license suspension provisions of the implied consent law[3] because his challenge was an impermissible collateral attack made after resorting to self-help—driving while under suspension. Our decision in *Higgins* rested on important policy considerations "directed to the preservation and strengthening of 'the civilizing hand of law, which alone can give abiding meaning to constitutional freedom'" *Higgins, supra* at 161 (citing *Walker v. Birmingham,* 388 U.S. 307, 321, 87 S.Ct. 1824, 1832, 18 L.Ed.2d 1210 (1967)). These

1. John Piacitelli was issued a driver's license for the first time in August of 1979 after he pleaded guilty to two charges of operating after suspension and after he had committed the third operating after suspension, but before he pleaded guilty to that third offense.

2. In addition to his three operating after suspension convictions (29 M.R.S.A. § 2184) and his operating while on habitual offender status (29 M.R.S.A. § 2298), Piacitelli also pleaded guilty to another charge of operating while on habitual offender status.

3. 29 M.R.S.A. § 1312.

policy considerations, we decided, overbalance a citizen's interest in vindicating his rights by collateral attack initiated by resort to self-help. *Higgins, supra* at 162. More recently, we followed the *Higgins* rationale and held that a defendant convicted of operating a motor vehicle while an order declaring him an habitual offender and prohibiting his operation of a motor vehicle remained in effect (29 M.R.S.A. § 2298) could not, on appeal to the Law Court, maintain a collateral attack on the underlying habitual offender adjudication. *See State v. Albert,* Me., 418 A.2d 190, 192 (1980).

In addition to refusing to allow this type of collateral attack after an individual has resorted to self-help, the Law Court has also considered and rejected a collateral attack in the form of an equitable action where the defendant has failed to timely utilize his adequate statutory remedy at the time suspension was imposed. *See Small v. Gartley,* Me., 363 A.2d 724, 727 (1976). In *Small,* the appellant's driver's license had been suspended four months prior to the time he instituted suit in Superior Court, seeking injunctive relief. The *Small* appellant had not pursued his statutory remedy of appeal to the Secretary of State at the time the suspension was imposed. The Superior Court dismissed the complaint and the Law Court upheld that ruling upon a finding that the Legislature had entrusted the Secretary of State with exclusive power to enforce motor vehicle suspensions and, therefore, the role of the judiciary was limited to review of administrative decisions.

 It is clear that our holdings in *Higgins, Albert,* and *Small, supra,* preclude Piacitelli from collaterally attacking the 1975 suspensions by the Secretary of State. Piacitelli's failure to seek direct judicial review of the suspensions at the time they were imposed constitutes a bar to challenging their validity at this time.

The only other issue which we need to address is Piacitelli's argument that the Superior Court ruling, that the state was not collaterally estopped from asserting the validity of the 1975 suspensions in cases subsequent to a May 1981 ruling by a District Court judge, was erroneous. The basis of the argument is that because a District Court judge granted Piacitelli's motion to dismiss a pending charge of operating after suspension (29 M.R.S.A. § 2184), and the motion was made on the sole ground that the 1975 suspensions were invalid, the state should be collaterally estopped from asserting the validity of the suspensions thereafter. Our reading of the record before us reveals that the docket entry of judgment in the District Court case at issue reads: "Motion granted. Complaint dismissed."

 The doctrine of collateral estoppel provides that the determination of an essential fact or issue that has been actually litigated and resolved by valid final judgment in a prior action is conclusive on that fact or issue in subsequent litigation between the parties or their privies. *S.H. Nevers Corp. v. Husky Hydraulics,* Me., 408 A.2d 676, 679 (1979). After examining the record of the District Court judgment we cannot determine that the issue of the validity of the license suspensions was actually litigated and that that issue was the basis of the District Court judge's decision below. Consequently, we will not reverse the Superior Court judge's ruling that the doctrine of collateral estoppel does not apply to the facts of this case.

The entry is:

Appeal denied.

Judgments of the Superior Court affirmed.

All concurring.