Randy A. SCHINDLER,
Petitioner-Appellee,

v.

CLERK OF CIRCUIT COURT, Chippewa County, Wisconsin; Hon. Richard H. Stafford, Circuit Judge, Presiding; and Attorney General Bronson C. LaFollette, Respondents-Appellants.

No. 82-3087.

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1983.

Decided Aug. 22, 1983.

Jerome S. Schmidt, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondents-appellants.

John E. Tradewell, Asst. State Public Defender, Madison, Wis., for petitioner-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and ROSENN, Senior Circuit Judge.*

ROSENN, Senior Circuit Judge.

In an effort to deal with the growing problem of drunk driving on the public highways, the Wisconsin legislature enacted a statutory system of progressive penalties for successive violations of its laws prohibiting the operation of a motor vehicle while under the influence of an intoxicant or a controlled substance (OWI). Appellant Schindler, convicted of a third violation under the statute, was sentenced to the minimum penalty for a third offense in accordance with the statutory standards. He sought habeas corpus relief in the United States District Court, 551 F.Supp. 561, on the ground that it was unconstitutional to incarcerate him as a third offender because he had not been represented by counsel when he was tried for his first offense. The district court found merit in Schindler's petition and granted habeas corpus relief. The State appealed and we reverse.

* The Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## I.

In structuring its system of progressive penalties for operating a motor vehicle while under the influence of intoxicants,[1] Wisconsin provided that the first violation would only constitute a civil offense and mandated a forfeiture of not less than $100 nor more than $500. Subsequent violations within a five year period were crimes punishable by a combination of fine and imprisonment. For a third violation, the statute prescribed a fine of not less than $500 nor more than $2000 and imprisonment for not less than thirty days nor more than one year.

On October 12, 1978, Schindler was charged with his first offense of operating a motor vehicle under the influence of an intoxicant in violation of Wis.Stat. § 346.-63(1). As a first offender he was subject only to a civil forfeiture of a sum of money. He was not represented by counsel in the proceedings establishing his violation and claims he was indigent. There is no indication that he was informed of a right to counsel or that he knowingly and voluntarily waived such right. Wisconsin does not provide counsel to first offense defendants because the proceedings are civil in nature.

Subsequently, petitioner committed a second violation of the statute and was tried and convicted of criminal charges, after first being informed of his right to

counsel and waiving that right. On April 12, 1981, Schindler was again arrested for driving under the influence of an intoxicant. On July 29, 1981, he was tried and convicted of a third offense under the Wisconsin OWI statute. At the time of sentencing, his counsel objected to the use of third offender standards, arguing that *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), prohibited the imposition of an enhanced penalty predicated upon an earlier uncounseled conviction. Petitioner maintained that under *Baldasar* he could not constitutionally be punished as a third offender when he had been denied counsel at the trial on his first offense. The trial court found *Baldasar* inapplicable and sentenced Schindler to the minimum sentence provided by the statute for a third offender. Schindler timely appealed to the Supreme Court of Wisconsin, but voluntarily dismissed his appeal when that court rejected an identical challenge in *State v. Novak,* 107 Wis.2d 31, 318 N.W.2d 364 (1982). Schindler thereupon filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Wisconsin.[2]

The district court addressed the merits of the habeas corpus petition and saw a parallel in the facts of *Baldasar, supra,* in which the Supreme Court held that an uncounseled misdemeanor conviction, though valid,

---

**1.** At the time of Schindler's trial, the statute provided in pertinent part:

(2)(a) Any person violating s. 346.63(1) [operating a motor vehicle under the influence of an intoxicant]:

1. Shall forfeit not less than $100 nor more than $500, except as provided in subd. 2 or 3.

2. Shall be fined not less than $250 nor more than $1,000 and imprisoned not less than 5 days nor more than 6 months if the total of revocations under s. 343.305 and convictions for violation of s. 346.63(1) or local ordinances in conformity therewith equals 2 within a 5-year period, except that revocations and convictions arising out of the same incident or occurrence shall be counted as one. The 5-year period shall be measured from the dates of the refusals or violations which resulted in the revocations or convictions.

3. Shall be fined not less than $500 nor more than $2,000 and imprisoned for not less

than 30 days nor more than one year in the county jail if the total of revocations under s. 343.305 and convictions for violation of s. 346.63(1) or local ordinances in conformity therewith equals 3 or more within a 5-year period, except that revocations and convictions arising out of the same incident or occurrence shall be counted as one. The 5-year period shall be measured from the dates of the refusals or violations which resulted in the revocations or convictions.
Wis.Stat. § 346.65(2)(a) (1979–80).

**2.** The district court concluded that petitioner had complied with the exhaustion requirements of 28 U.S.C. § 2254(b), finding that it would have been futile for him to pursue his appeal in the Supreme Court of Wisconsin in the face of its decision in *State v. Novak, supra.* The district court's finding is not challenged in this appeal and we see no need to address it.

could not be used to enhance the punishment for a later offense by upgrading it to a felony. Relying on the Court's plurality opinion in *Baldasar,* the district court in the instant case held that an uncounseled civil forfeiture may not be used for enhancement purposes in computing a sentence for imprisonment on a later offense.[3]

## II.

We commence our analysis with *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), in which the Court extended the rule established in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that the right to counsel guaranteed by the sixth amendment applies in all state felony proceedings, "making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one." 389 U.S. at 114, 88 S.Ct. at 261. In *Burgett* the Court held that the prosecution may not offer evidence of a prior uncounseled felony conviction in an effort to enhance the defendant's punishment under the Texas recidivist statute. The Court explained, "[T]he admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon v. Wainwright* is inherently prejudicial . . . ." *Id.* 389 U.S. at 115, 88 S.Ct. at 262. Five years later in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court held that a prior conviction that was constitutionally invalid, having been obtained in violation of *Gideon,* could not even be considered by the judge in sentencing a defendant convicted of bank robbery.

In the same term as *Tucker,* the Court decided *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and extended the right to counsel to misdemeanor proceedings where the accused is sentenced to a prison term. The Court rejected the notion that simply because crimes punishable by imprisonment for less than six months may be tried without a

jury, they may also be tried without a lawyer. *Id.* at 30–31, 92 S.Ct. at 2009–2010. It observed that although *Gideon v. Wainwright, supra,* involved a felony prosecution, the rationale of the decision applied to any criminal trial where the accused's liberty is in jeopardy, explaining, "[T]he requirement of counsel may well be necessary for a fair trial even in a petty-offense prosecution." 407 U.S. at 33, 92 S.Ct. at 2010. The Court therefore held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012 (footnote omitted).

■ In *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), the Court shed some light on the limitations of its prior decisions in *Burgett, Tucker,* and *Argersinger.* In *Scott,* an indigent uncounseled defendant had been convicted of shoplifting and fined $50 in an Illinois state court. Under the applicable statute, he had faced a possible sentence for such an offense of one year in jail, or a $500 fine, or both. The defendant contended that under the Supreme Court's sixth amendment decisions, particularly *Argersinger,* a state is required to provide counsel whenever imprisonment is an authorized penalty. The Supreme Court rejected this contention. The Court noted that in *Argersinger* it had drawn the line at actual imprisonment as "defining the constitutional right to appointment of counsel." 440 U.S. at 373, 99 S.Ct. at 1162. It therefore held in *Scott* "that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel in his defense." *Id.* at 373–74, 99 S.Ct. at 1161–62. Thus, conviction of an uncounseled indigent defendant is constitutionally valid, even if he has not waived his right to

---

**3.** The district court thought it irrelevant that the sentencing range for second offenders under the Wisconsin drunk driving statute encom-

· passed the sentence actually imposed on Schindler.

counsel, so long as the accused is not sentenced to an actual term of imprisonment.

Neither *Scott* nor *Argersinger* answered the question whether a valid uncounseled misdemeanor conviction not resulting in imprisonment could be used for collateral purposes. This issue arose for the Court's consideration in *Baldasar v. Illinois, supra.* Baldasar had been convicted of misdemeanor theft in May 1975 without being represented by a lawyer, and was given a fine and placed on probation. Six months later, he was charged with another offense under the same statute. At his trial the state introduced evidence of the prior conviction and asked that Baldasar be punished as a felon under the Illinois enhancement statute. His counsel unsuccessfully objected to the collateral use of his prior uncounseled conviction on the ground that because Baldasar had not been represented by a lawyer at the first proceeding, the conviction was too unreliable to support enhancement of the second misdemeanor. Baldasar was convicted of a felony and sentenced to prison for one to three years. The Illinois Supreme Court affirmed his conviction.

By a 5–4 vote, the Supreme Court reversed the conviction in a cursory per curiam opinion, relying on reasons expressed in three separate concurring opinions. In his brief concurrence, Justice Stewart expressed the view that Baldasar's felony sentence collided with the constitutional rule of *Scott v. Illinois, supra,* for as an indigent defendant he was sentenced to an increased term of imprisonment "*only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense." *Baldasar, supra,* 446 U.S. at 224, 100 S.Ct. at 1586 (emphasis in original). In his own concurrence, Justice Marshall likewise concluded that a defendant's "prior uncounseled misdemeanor conviction could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction." *Id.* at 226, 100 S.Ct. at 1587. Justices Brennan and Stevens joined Justice Stewart and Justice Marshall in their concurring opinions.

Justice Blackmun, differing in his reasons from the other two concurrences, concurred separately. Maintaining the view he had expressed in his dissent in *Scott v. Illinois, supra,* he reiterated the "bright line" approach that would require the appointment of counsel whenever an indigent defendant is prosecuted for a non-petty criminal offense punishable by more than six months' imprisonment. Having been prosecuted for an offense punishable by more than six months' imprisonment, Baldasar, under Justice Blackmun's test, had been entitled to counsel at his original misdemeanor trial. Because Baldasar was not represented by a lawyer, Justice Blackmun believed that the prior conviction was completely invalid and could not be used to support enhancement. Thus, Justice Blackmun expressed no view on the reasoning employed by the plurality. His vote, however, was essential in order to achieve a majority. In light of Justice Blackmun's singular approach and the failure of the *Baldasar* majority to agree upon a rationale for its result, the scope of the decision remains unclear.[4]

### III.

A troublesome question not considered in *Baldasar* is now before us: may a determination of a statutory violation in an uncounseled civil forfeiture proceeding be used as a basis for computing a prison sentence for a subsequent conviction for another offense under the same statute? Applying the rationale offered by the plurality of Justices Stewart, Marshall, Stevens, and Brennan, it is arguable that this question should be answered in the negative. On the other hand, the four dissenting Justices in *Baldasar* would apparently answer this question in the affirmative. Justice Blackmun's views on this question are not clear because he expressed no opinion in *Baldasar* on whether an uncounseled conviction that

---

4. *See* Rudstein, *The Collateral Use of Uncounseled Misdemeanor Convictions after Scott and* *Baldasar,* 39 U.Fla.L.Rev. 517, 529 (1982).

is valid because no prison sentence is imposed or authorized may nonetheless be the predicate for imposing a prison term for a subsequent offense.

After careful consideration, we decline to extend the holding of *Baldasar* to the circumstances of the instant case. Initially, it is important to bear in mind that in *Baldasar* only four Justices endorsed the view that a valid uncounseled criminal conviction may not be used to enhance the penalty for a subsequent offense. Thus, the decision provides little guidance outside of the precise factual context in which it arose. Because there are significant differences between *Baldasar* and the instant case, we conclude that *Baldasar* provides no majority rationale applicable to the instant case and therefore does not control here. *See United States v. Robles-Sandoval,* 637 F.2d 692, 693 n. 1 (9th Cir.), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981).[5]

Underlying the views of the plurality in *Baldasar* was the concern that the State of Illinois, by sentencing the defendant to an increased term of imprisonment, was punishing him for his earlier criminal conviction, which had been returned without benefit of counsel. Although the defendant's prior conviction was lawful under *Scott v. Illinois* because he was not sentenced to prison, the plurality believed that Baldasar's first misdemeanor conviction could not be used to enhance the punishment for his second offense. But nowhere does any member of the *Baldasar* plurality suggest that the prior conviction is invalid for other collateral purposes. Indeed, only a few months before *Baldasar,* the Court held in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), that an unconstitutional uncounseled felony conviction could serve as the basis for classifying an individual as a convicted felon and subjecting him to criminal liability for possession of firearms under 18 U.S.C.App. § 1202(a)(1).[6] The Court explained that enforcement of the firearms disability by means of a criminal sanction was permissible because the previous uncounseled conviction was not being used to "support guilt or enhance punishment," 445 U.S. at 67, 100 S.Ct. at 922 (quoting *Burgett, supra,* 389 U.S. at 115, 88 S.Ct. at 262), but merely to identify the class of individuals who, because they were potentially dangerous, should therefore be disabled from possession of firearms.[7]

We believe that petitioner Schindler's prior civil offense for driving while intoxicated was not used to "support guilt or enhance punishment" for the subsequent offenses. An examination of the Wisconsin statutory scheme reveals that the state legislature was concerned about the problem of drunk

**5.** In *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977), the Court held that when no opinion in one of its decisions commands the support of a majority of the Justices the holding of the Court is the position taken by the Justices who base their acquiescence in the decision on the narrowest grounds. "The rationale underlying this 'narrowest grounds' interpretation of plurality decisions is that it constitutes a least common denominator upon which all of the Justices in the majority agree .... However, there does not seem to be any such least common denominator among the *Baldasar* opinions that applies to the case before us." *State v. Novak,* 107 Wis.2d 31, 38, 318 N.W.2d 364, 367–68 (1982). The statute and section before the Wisconsin court are precisely the same as are before us in this case and we agree with that court's appraisal of the *Baldasar* opinion; there is no common denominator applicable to this case upon which all of the Justices in the majority agree.

*See also* Note, *The Precedential Value of Supreme Court Plurality Decisions,* 80 Colum.L. Rev. 756, 769–74 (1980).

**6.** Lewis was sentenced to serve an 18 month prison term for possession of a firearm.

**7.** The Court noted that in both *Burgett* and *Tucker* as well as *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), the subsequent conviction or sentence violated the sixth amendment "because it depended upon the reliability of a past uncounseled conviction." *Id.* at 67, 100 S.Ct. at 922. By contrast, it observed, the federal gun laws focus "on the mere fact of conviction" or indictment, not on the reliability of a prior conviction. Analyzing Congress' concern and worry about the easy availability of firearms and the nexus between violent crime and firearms, the Court perceived that "[e]nforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment.'" *Id.*

driving but was reluctant to stigmatize the first offense with criminal sanctions. Accordingly, the State adopted a provision making a first offense only a civil violation, punishable by a forfeiture of a sum between $100 and $500. This would have the effect of impressing upon violators the importance of refraining from driving while intoxicated, and putting them on notice of the consequences of repeated offenses without initially subjecting them to criminal stigma. The legislature treated subsequent offenses as criminal violations because of the menace of repeated drunk driving on the public highways and public policy justifying some imprisonment for an offense committed after a civil adjudication. The civil adjudication had the effect of specifically putting Schindler on notice that he was a high-risk individual, that the State had a public policy against driving while intoxicated, and that future violations would subject him to criminal sanctions. Thus, when petitioner was sentenced as a third offender, it was not an attempt to "punish" him for his first offense and uncounseled trial.

Because *Lewis* allowed an *unlawful* conviction to be used as a basis for subjecting an individual to criminal liability for possession of a firearm, we believe Schindler's prior *lawful* adjudication can with equal logic be used to subject him to criminal liability. The initial proceeding against Schindler, though civil in nature, established his deviant conduct and classification for future drunk driving violations.

Despite the confusion engendered by *Baldasar,* a number of decisions have approved the collateral use of uncounseled criminal convictions in circumstances akin to those of the instant case. The Fifth Circuit has held that evidence of a prior uncounseled misdemeanor conviction for which no prison term was imposed may be introduced at the punishment stage of proceedings arising out of a subsequent criminal offense. *Thompson v. Estelle,* 642 F.2d 996 (5th Cir.1981); *Wilson v. Estelle,* 625 F.2d 1158 (5th Cir. 1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1985, 68 L.Ed.2d 302 (1981). Similarly, in *United States v. Robles-Sandoval, supra,* the Ninth Circuit allowed a deportation order issued after an uncounseled administrative hearing to serve as the basis for a criminal proceeding charging an alien with illegal entry into the United States.

Construing the very provision of the Wisconsin statute before us in the instant case, the Supreme Court of Wisconsin held in *State v. Novak, supra,* that a defendant's incarceration as punishment for having been twice convicted within a five-year period of operating a motor vehicle while under the influence of an intoxicant did not violate his federal or state constitutional rights even though the first conviction was obtained under a municipal ordinance without counsel provided to the defendant. In *Novak,* the Wisconsin court rejected the defendant's argument that under *Baldasar v. Illinois* an uncounseled civil forfeiture conviction may not be used to impose incarceration for a second conviction. It therefore permitted the use of "the first conviction" as a basis for sentencing the defendant as a repeat offender.

There are strong policy reasons supporting the Wisconsin statutory scheme of progressive penalties beginning with a civil forfeiture. The Wisconsin legislature apparently considered a progressive system of penalties an important method by which to deal with the growing menace of drunk driving on the public highways.[8]

---

**8.** Wisconsin's drunk driving problem is a microcosm of a greater national problem as revealed in a December 1976 report of a special Senate Committee of Pennsylvania appointed to investigate the problem of driving under the influence of alcohol. After conducting a series of hearings, the Committee reported that "driving while intoxicated has become perhaps one of the most dangerous and costly forms of criminal activity." According to the Commit-tee, nationwide the estimate of alcohol-related fatalities ranges to 25,000 annually, a yearly death tool that quickly dwarfs the total of 45,-000 fatalities among United States Armed Forces in the ten-year Vietnam conflict.

"Proportionately, alcohol-related auto fatalities represent close to 50 percent nationally of all traffic deaths." Final Report, The Special Senate Committee To Investigate the Problem

A rule prohibiting criminalization of an OWI offense because at an earlier civil proceeding involving a similar violation the accused was uncounseled and indigent would impose severe burdens on the State in carrying out the legislature's intention to deter drunk driving on the public highways. To require the presence of counsel at civil forfeiture proceedings (or a valid waiver) because of the possibility that the accused will commit additional offenses that would be subject to criminal penalties would prove burdensome, exorbitantly expensive, and in many cases completely unnecessary. As the Supreme Court of Wisconsin concluded in *State v. Novak, supra,* "the increased costs involved in providing counsel at public expense, plus the increased burden on the courts of ensuring that such representation is provided, far outweigh any possible 'benefits' such requirement would produce." 107 Wis.2d at 42, 318 N.W.2d at 370. On the other hand, it would completely frustrate the statutory scheme if an offender could not be subjected to the criminal penalties for multiple offenses.

Admittedly, nothing prevents the State of Wisconsin from amending its statute to provide for criminal sanctions commencing with the first violation. Arguably, under the plurality's reasoning in *Baldasar,* such an amendment would require the Wisconsin courts to appoint counsel for indigents if subsequent violations were to be enhanced. An amendment of this nature, however, would defeat the purposes the legislature had in mind in enacting its progressive system of penalties. The legislature apparently desired to treat a first violation without

criminal stigma because the violation is not the consequence of evil intent. Wisconsin's scheme gives the first offender notice that if he persists in his misconduct, any violation after the first offense will constitute criminal conduct with some certain imprisonment. As in *Lewis,* the use of criminal sanctions is predicated on the defendant's status as an adjudicated offender, not on the reliability of the civil forfeiture proceedings.

On balance, we believe that the Wisconsin OWI statute represents a fair, intelligent, and reasonable way of dealing with the serious problem of drunk driving on its public highways. The advantages of this system far outweigh any possible criticism of asymmetry in the law resulting from the absence of counsel at the initial civil forfeiture proceeding. It is undisputed that the State of Wisconsin was not required to provide counsel for Schindler at his civil proceeding. We hold that the valid judgment entered in the civil proceeding may provide the basis for treating Schindler as a third offender and subjecting him to the criminal penalties provided by Wis.Stat. § 346.-65(2)(a)(3).

The judgment of the district court granting the writ of habeas corpus is reversed.

of Driving Under the Influence of Alcohol, Dec. 1976, p. 1.

The Crime Report of the United States Department of Justice for the year 1977 reported over 1,104,000 arrests in the nation for "driving under the influence." FBI Uniform Crime Reports, 1977, table 25, p. 173. Table 26 of the same report shows that arrests for this crime had increased 115.3% over the previous decade. The Report of the Department of Justice for 1981 shows a sharp increase over 1977 to 1,531,400 nationwide arrests for "driving under the influence." FBI Uniform Crime Reports, 1981, table 23, p. 162.

In seeking changes by Wisconsin's 1977 Special Assembly of the Legislature to Wisconsin's law relating to drunk driving, Governor Martin J. Schreiber wrote: "[I]t is my firm belief that the principle of responsible government dictates that immediate action is both justified and necessary to curb the alarming threat to public safety caused by the drinking driver. Certainly, the drinking driver needs help, but more importantly, the public needs protection." Letter of November 1, 1977, to Senator Carl W. Thompson, Chairperson, Senate Human Services Committee, and to Representative James Rutkowski, Chairperson, Assembly Judiciary Committee.