**STATE of Maine**

v.

**James O'NEILL.**

Supreme Judicial Court of Maine.

Argued Nov. 21, 1983.

Decided March 7, 1984.

David M. Cox, Dist. Atty., Margaret Kravchuk (orally), Gary F. Thorne, Asst. Dist. Attys., Bangor, for plaintiff.

Ferris, Dearborn & Willey, N. Laurence Willey (orally), Brewer, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendant, James O'Neill, appeals to this Court from three convictions in Superior Court (Penobscot County), two of which were for operating a motor vehicle on July 23, 1982 and December 8, 1982 respectively, while a revocation prohibiting its operation for being an habitual offender was in effect, the third for giving a false name to the police on the occasion of his first apprehension. O'Neill contends (1) that his acquittal on December 7, 1981, of the charge of operating on December 3, 1980, while his driver's permit was under revocation for being an habitual offender precluded the Secretary of State from reclassifying him an habitual offender on July 19, 1982, (2) that he cannot be imprisoned for operating while an habitual offender, since his 1982 classification as such was based in part on a prior uncounseled conviction, and (3) that *his conviction* for giving a false name cannot stand because of police misconduct in

illegally seizing evidence of his true identity. We deny the appeal.

On July 7, 1980 James O'Neill was classified an habitual offender by the Secretary of State, 29 M.R.S.A. § 2292 (Public Laws, 1979, ch. 10, § 2). O'Neill was subsequently arrested and charged with operating a motor vehicle while an habitual offender. After a jury-waived trial held in Superior Court on December 7, 1981, O'Neill was found not guilty of this offense. The record of this proceeding contains no indication of the basis upon which the presiding justice found O'Neill not guilty.

The defendant was next arrested in 1982 for operating a motor vehicle while under the influence of intoxicating liquor (OUI). Without the assistance of counsel, he pled guilty to the OUI charge on April 8, 1982, and on July 19, 1982 O'Neill was again classified an habitual offender by the Secretary of State. As a result, his license was revoked for an indefinite period.

On July 23, 1982, two Bangor police officers stopped O'Neill because his rear lights were not working. O'Neill identified himself to the officers as "Tim O'Neill" and was unable to produce a driver's license. After the officers ran a Department of Motor Vehicle check, they arrested O'Neill for driving while an habitual offender and for giving a false name. A pat down search of O'Neill following the arrest uncovered an envelope containing a pay stub for a "James O'Neill." On December 8, 1982, O'Neill was again arrested for operating a vehicle while an habitual offender.

The charges for driving while an habitual offender and giving a false name, both of which stemmed from the July 23rd arrest, were heard in a jury-waived trial on April 7, 1983, together with the second charge for driving while an habitual offender which allegedly occurred on December 8, 1982. O'Neill was found guilty of all three accusations and sentenced to three concurrent three month terms in the Penobscot County Jail.

The defendant first contends that his convictions for operating while an habitual of-

fender cannot stand, because his 1982 reclassification as an habitual offender was contrary to law. Under Maine law an "habitual offender" is, with certain exceptions not here applicable, any person whose driving record, as maintained in the office of the Secretary of State, shows that the person has accumulated within a five-year period three or more convictions or adjudications for the offenses listed in 29 M.R.S.A. § 2292. An habitual offender whose license has been restored by the Secretary of State pursuant to 29 M.R.S.A. § 2296 (Supp.1983–1984) may be reclassified an habitual offender on the basis of one conviction or adjudication for an offense described in 29 M.R.S.A. § 2292(1) within a five year period following restoration. 29 M.R.S.A. § 2296–A (Supp.1983–1984).[1]

■ The defendant claims that his acquittal on December 7, 1981, of the charge of operating a motor vehicle while an habitual offender precluded the Secretary of State on July 19, 1982, from combining the 1981 classification as an habitual offender with O'Neill's 1982 OUI conviction to reclassify him an habitual offender. The defendant's argument is without merit.

■ O'Neill may not use the instant proceeding to collaterally attack his 1982 reclassification. *See State v. Albert,* 418 A.2d 190 (Me.1980); *see also State v. Piacitelli,* 449 A.2d 1126 (Me.1982) (denying use of declaratory and injunctive relief proceedings to attack habitual offender adjudication); *State v. Higgins,* 338 A.2d 159 (Me. 1975) (driver cannot attack previous license suspension in proceeding for driving under a suspended license). A person may not take the law into his own hands by driving a motor vehicle in defiance of the State's determination that he is an habitual offender. The administrative classification may be attacked only by a direct appeal of the Secretary of State's decision.[2] *Albert,* 418 A.2d at 192.

O'Neill next argues that, because his reclassification as an habitual offender by the Secretary of State in 1982 was based *in part* upon the uncounseled OUI conviction, the Secretary's reclassification may not serve as a valid predicate for the imposition of imprisonment upon conviction of the offense of operating a motor vehicle while an habitual offender. He contends that such use of an uncounseled conviction violates his constitutional right to counsel in criminal cases. *See* Constitution of the United States, Amend. VI; Constitution of Maine, Art. 1, § 6. We disagree.

The habitual offender law, 29 M.R.S.A. §§ 2291 et seq. (formerly 29 M.R.S.A.

---

1. Among the offenses described in 29 M.R.S.A. § 2292(1), there is listed the offense of operating or attempting to operate while under the influence of intoxicating liquor or drugs or with a blood-alcohol level of 0.10% or more. 29 M.R.S.A. § 2292(1)(B) (Supp.1983–1984).

2. Even if O'Neill could use this proceeding to collaterally attack his habitual offender classification, his attempt to do so would not prove successful. O'Neill's 1981 acquittal of the charge of operating while an habitual offender may have been due to the fact that O'Neill, after having received an original suspension or revocation based upon a failure to give or thereafter maintain proof of financial responsibility, had accumulated three separate and distinct convictions or adjudications for operating while his right to do so was under such suspension or revocation for that very reason of failing to comply with the financial responsibility law. 29 M.R.S.A. § 2292(4) expressly excepts the person with that type of a record from being classified an habitual offender. But the statutory exclusion to become operative requires that *all* of the person's convictions or adjudications be based on the offense of operating while the driver's license to operate is under suspension or revocation. The 1982 reclassification as an habitual offender, made after O'Neill's 1982 OUI conviction, took the defendant's record outside the exception clause of section 2292(4), since the convictions on which the reclassification was based were not *all* convictions for operation while under suspension or revocation. At the time of his reclassification as an habitual offender, O'Neill had accumulated with the Secretary of State within a five-year period convictions or adjudications for three separate and distinct offenses within the scope of 29 M.R.S.A. § 2292(1)(B) and (D), *i.e.* one for operating while under the influence of intoxicating liquor in 1982 and two for operating a motor vehicle while the operator's license to operate was under suspension or revocation in 1980.

§§ 2271 et seq.) represents Maine's comprehensive system enacted to provide safety on the highways.[3] We have in mind the great number of fatalities and the serious amount of property losses occasioned by drivers who are indifferent to the safety and welfare of other travelers on the highways and the general disrespect with which many motor vehicle operators look upon traffic regulations and the orders of Maine courts and administrative agencies issued in connection with their enforcement. That is the basic reason why the Legislature, in an effort to provide *maximum safety* for all persons who travel or otherwise use the public highways of the State, created the status of habitual offender for those who repeatedly violate traffic laws, subjecting the adjudicated habitual offender who operates a motor vehicle while the revocation prohibiting its operation is in effect to the criminal sanctions of a Class C crime with mandatory minimum terms of imprisonment. 29 M.R.S.A. § 2298. The administrative adjudication of habitual offender status and concomitant notice of suspension or revocation of the person's right to operate motor vehicles as a result thereof should have the effect of warning the individual that he or she is a high-risk automobile driver and that future operations while the right to operate remained under suspension or revocation would subject the person to criminal sanctions of imprisonment.

In *State v. Albert,* 418 A.2d at 192, we quoted with approval the language of *State v. Higgins,* 338 A.2d at 164 to the effect that

the public interest competing against defendant's interest to vindicate a claimed constitutional right is the avoidance of the proliferation of criminality and the potential for anarchy which inheres in allowing citizens to engage in 'self-help' conduct constituting an independent crime as the initial step of a collateral attack upon the constitutionality of a statute and of governmental action taken pursuant to such statute.

There are strong policy reasons supporting Maine's statutory scheme of administrative determinations of habitual offender status for repeated violators of the traffic laws of the State and the imposition of criminal sanctions for future violations by the adjudicated habitual offender. Prohibiting imprisonment of habitual offenders for their repeated abuse of the motor-vehicle-operation privilege denied them by reason of their habitual offender status, when their status as such was determined in an earlier civil proceeding without the assistance of counsel or, as in the instant case, where the uncounseled defendant pled guilty to the charge of operating under the influence of intoxicating liquor, would impose on the State and on the courts such severe burdens as to frustrate for all practical purposes the legislative scheme designed to free the highways of the State from those drivers

who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the State of Maine and for the orders of Maine courts and administrative agencies.

29 M.R.S.A. § 2291(2).

As stated in *Lewis v. United States,* 445 U.S. 55, 66–67, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980), the Supreme Court has never suggested that an uncounseled conviction is invalid for all purposes. *See Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Loper v. Beto,* 405 U.S.

---

3. 29 M.R.S.A. § 2291. *Declaration of policy*
It is declared to be the public policy of Maine:
1. *Safety.* To provide maximum safety for all persons who travel or otherwise use the public highways of the State;
2. *Privileges denied.* To deny the privilege of operating motor vehicles on these highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the State of Maine and for the orders of Maine courts and administrative agencies; and
3. *Discourage repetition.* To discourage repeated violations by individuals and to impose increased added deprivation of the privilege to operate motor vehicles upon habitual offenders who repeatedly violate traffic laws.

473, at 482, n. 11, 92 S.Ct. 1014, at 1019 n. 11, 31 L.Ed.2d 374 (1972).

■ Use of an uncounseled conviction of OUI in this case as the basis in part for imposing a civil motor-vehicle-operation disability, enforceable by a criminal sanction of imprisonment for his subsequent misconduct, did not violate the defendant's Sixth Amendment rights. It is analogous to the situation in *Lewis v. United States, supra,* and in our own cases of *State v. Vainio,* 466 A.2d 471 (Me.1983) and *State v. Myrick,* 436 A.2d 379 (Me.1981), which stand for the proposition that the use of an uncounseled felony conviction may serve as the basis for disqualifying a person from dealing in or possessing firearms, with criminal sanctions to be imposed on violation of the restriction, without the subsequent conviction for committing the prohibited act being in violation of the person's constitutional right to counsel.

■ O'Neill, however, argues that the Supreme Court of the United States in *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), by prohibiting the imposition of an enhanced penalty predicated upon an earlier uncounseled conviction, presages a departure from the *Lewis* rationale. We disagree. In *Baldasar,* the Court held that an uncounseled misdemeanor conviction cannot serve as the basis for transforming what would otherwise be a misdemeanor into a felony and for subjecting the accused to an extra increment of imprisonment solely because of his prior uncounseled conviction. In *Baldasar,* as in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (enhancement of punishment under a recidivist statute), as in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (consideration of uncounseled conviction in sentencing on a subsequent conviction), as in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (use of uncounseled conviction to impeach the general credibility of the defendant), the Court's rationale for finding a violation of Sixth Amendment rights was made to depend on the unreliability of the past uncounseled conviction. In the instant case, as in *Lewis,* the focus is not on reliability or non-reliability of the previous uncounseled conviction, but on the mere fact of conviction or the mere fact of the adjudication of habitual offender status. O'Neill's present conviction and sentence to imprisonment is not punishment for his earlier OUI conviction, but stems from his operation of a motor vehicle in direct contravention of the Secretary of State's decision classifying him as an habitual offender and in open violation of the statutory prohibition purposely enacted to discourage repeated violations of traffic laws by that class of people. Maine has a legitimate interest in the use of imprisonment sanctions to deter prospective motor vehicle operators from flouting the civil disability classification of an habitual offender, so long as the classification stands unreversed, to assure maximum safety for all other travelers on the public highways of the State, notwithstanding any impairment in the proceedings leading to the habitual offender adjudication and regardless of the basis upon which the person was declared ineligible to operate a motor vehicle. We hold that *Baldasar* is inapposite. *See Schindler v. Clerk of Circuit Court,* 715 F.2d 341 (7th Cir.1983).

■ Finally, O'Neill appeals his conviction for giving a false name on the ground that evidence consisting of a pay stub containing his true name should have been suppressed. The defendant claims that the pay stub was unlawfully seized when the Bangor Police officers searched him during the course of his July 23, 1982, arrest. The record plainly indicates that O'Neill was searched incident to his lawful arrest, both, for driving while his permit to do so was under suspension and for the giving of a false name. Such a search is a valid exception to the prohibition against warrantless searches. *See State v. Babcock,* 361 A.2d 911, 915 (Me.1976).

The entry is:

Judgment affirmed.

All concurring.