STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-23-02

)
)
MEGAN WILSON,　　　　　　　　　　　　　)
)
　　　　　　Petitioner,　　　　　　　　　)
)
　　　　v.　　　　　　　　　　　　　　　)　　　**DECISION AND ORDER**
)　　　　　**(M.R. CIV. P. 80C)**
MAINE BUREAU OF MOTOR　　　　　　　)
VEHICLES,　　　　　　　　　　　　　　)
)
　　　　　　Respondent.　　　　　　　　)
)

Pursuant to M.R. Civ. P. 80C, Petitioner Megan Wilson appeals from

Respondent Secretary of State, Bureau of Motor Vehicle's ("the agency") decision

dated December 20, 2022, which upheld the Secretary's revocation of Ms. Wilson's

driver's license based upon her classification as a habitual offender. For the reasons

that follow, the agency's decision is affirmed.

## BACKGROUND

Following an accident that occurred in January 2015, Ms. Wilson was

convicted of failure to report an accident, leaving the scene of an accident involving

bodily injury, and driving to endanger. R. at Tab 2; Tab 4, pg. 5. The court entered

the convictions on March 16, 2015, and on the driving to endanger count, ordered

that Ms. Wilson's license be suspended for 30 days. R. at Tab 2; Tab 4, pg. 7.

In April 2015—after the court-ordered term of suspension was complete—the

agency suspended Ms. Wilson's license for an additional 180 days based on her

conviction for leaving the scene of an accident involving bodily injury. *See id.* Ms.

1

Wilson did not seek judicial review of the April 2015 suspension. While the 180-day suspension was in effect, Ms. Wilson committed the offense of operating after suspension ("OAS"). R. at Tab 2; Tab 3; Tab 8. She was subsequently convicted of that offense on September 17, 2015. R. at Tab 3.

Following a second OAS conviction in 2021, the Secretary notified Ms. Wilson that her driving privileges had been revoked indefinitely pursuant to Maine's Habitual Offender Statute. *See* 29-A M.R.S. §§ 2551-A, 2552 (requiring the Secretary of State to revoke the license of a person who "has accumulated 3 or more convictions ... [for qualifying offenses] arising out of separate acts committed within a 5-year period"). The Secretary deemed Ms. Wilson a habitual offender based on the following offenses:

(1) leaving the scene of an accident involving bodily injury (violation date: January 9, 2015; conviction date: March 16, 2015);

(2) operating after suspension (violation date: July 12, 2015; conviction date: September 17, 2015); and

(3) operating after suspension (violation date: February 17, 2019; conviction date: September 30, 2021).

R. at Tab 6.

An administrative hearing was held on November 29, 2022, to address the revocation. R. at Tab 4. There, Ms. Wilson's attorney argued that her 2015 OAS conviction should not count towards the habitual offender classification because the underlying suspension was unlawfully imposed. In a decision dated December 20, 2022, the agency rejected Ms. Wilson's argument and upheld the classification and revocation of her driving privileges. R. at Tab 3. Ms. Wilson timely appealed

2

pursuant to M.R. Civ. P. 80C. The court conducted oral argument on August 9, 2023.

## STANDARD OF REVIEW

Judicial review of administrative agency decisions is "deferential and limited." *Friends of Lincoln Lakes v. Bd. of Env't Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128. The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Env't Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566.

In conducting its review of an agency decision, the court "do[es] not substitute [its] judgment for that of the agency and will 'affirm findings of fact if they are supported by substantial evidence in the record.'" *Anglez Behavioral Health Servs. v. HHS*, 2020 ME 26, ¶ 12, 226 A.3d 762. "[I]nstead, [the court] will vacate an agency's factual findings 'only if there is no competent evidence in the record to support' the findings." *Id.* The party seeking to vacate an agency decision bears the burden of persuasion. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

## DISCUSSION

On appeal, Ms. Wilson contends that the agency improperly relied on the 2015 OAS conviction to classify her as a habitual offender. Pet'r's Br. 2-4. She focuses her challenge on the validity of the suspension underlying that conviction. *Id.* Specifically, she asserts that the agency lacked authority to suspend her license

for 180 days in 2015 because the crime upon which the suspension was based (leaving the scene of an accident involving bodily injury) was not a "2nd offense" as that term is used in the applicable suspension statute. *See* 29-A M.R.S. § 2472(2).

Even if Ms. Wilson's reading of 29-A M.R.S. § 2472 is correct, the court nevertheless concludes that Ms. Wilson's failure to seek direct judicial review of the April 2015 suspension at the time it was imposed bars her from challenging its validity at this time. *See State v. Spiegel*, 2013 ME 73, ¶¶ 10-12, 72 A.3d 519; *Piacitelli v. Quinn*, 449 A.2d 1126, 1127-28 (Me. 1982). The Law Court has made clear that a defendant who has "failed to directly attack the legality of the suspension at the time it was imposed, cannot raise the issue of the validity of the underlying suspension" to avoid or invalidate an OAS conviction. *Piacitelli*, 449 A.2d at 1127; *State v. Holmes*, 2004 ME 155, ¶ 8, 864 A.2d 166. Indeed, the Law Court has "consistently disallowed collateral attacks on outstanding underlying adjudications . . . in cases involving motor vehicle offenses." *State v. Vainio*, 466 A.2d 471, 478 (Me. 1983).[1]

---

[1] *See, e.g., Spiegel*, 2013 ME 73, ¶ 12, 72 A.3d 519 (explaining that a license suspension, license revocation, or habitual offender classification will "remain[] valid and enforceable through criminal sanctions unless the suspension, revocation, or classification is timely and successfully appealed and is set aside *before* the motor vehicle operation at issue" (emphasis original)); *Holmes*, 2004 ME 155, ¶ 8, 864 A.2d 166 ("Defendants who do nothing to contest their suspensions prior to their arrests cannot mount collateral attacks at an operating after suspension trial."); *State v. O'Neill*, 473 A.2d 415, 417 (Me. 1984) ("A person may not take the law into his own hands by driving a motor vehicle in defiance of the State's determination that he is an habitual offender. [That] classification may be attacked only by a direct appeal of the Secretary of State's decision."); *State v. Higgins*, 338 A.2d 159, 160-65 (Me. 1975) (holding that a driver cannot attack a previous license suspension in a prosecution for driving under a suspended license).

Here, Ms. Wilson did not appeal the 180-day suspension imposed in April 2015. Absent a direct, timely, and successful challenge to the suspension, the suspension remained valid and could be enforced through an OAS prosecution. *Spiegel*, 2013 ME 73, ¶¶ 11-12, 72 A.3d 519. That OAS conviction, in turn, served as a proper predicate for the habitual offender classification. 29-A M.R.S. § 2551-A. Under these circumstances, the agency correctly rejected Ms. Wilson's collateral attack on the suspension and appropriately relied on the 2015 OAS conviction in reaching its classification decision.

The entry is:

The agency's decision upholding the revocation of Ms. Wilson's license based on her status as a habitual offender is affirmed.

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: 8|11|23

_____
Julia M. Lipez
Justice, Superior Court

5