STATE of Maine

v.

Carl VAINIO.

Supreme Judicial Court of Maine.

Argued June 17, 1983.

Decided Oct. 5, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Mark S. Kierstead (orally), Waterville, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE and WATHEN, JJ., and DU-FRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

At a jury trial in July, 1982, in the Superior Court, Penobscot County, Carl Vainio, the defendant, was found guilty of the crime of having a firearm in his possession or under his control contrary to the provisions of 15 M.R.S.A. § 393, which prohibits a person who has been convicted of a crime punishable by one year or more imprisonment from owning or having in his possession or under his control any firearm, unless such a person has obtained a permit from the Commissioner of Public Safety.

On appeal, Vainio contends (1) that, because his underlying previous theft conviction, if graded under title 17–A, section 362, of the Maine Criminal Code, would be a Class E crime punishable by imprisonment for a period not to exceed 6 months, he was not a member of the class of persons convicted of a crime punishable by one year or more imprisonment contemplated by section 393 of title 15, (2) that this statute as applied to him in the instant case operates as an ex post facto law in violation of both the Constitutions of the State of Maine and of the United States, and (3) that his 1962 felony conviction of larceny was null and void, in that it was obtained as a result of his plea of guilty to the charge without the benefit of his constitutional right to assistance of counsel. We affirm the Superior Court judgment.

## Facts

In September, 1961, Carl Vainio was indicted by the Grand Jury in Piscataquis County for stealing brass pipes belonging to Guilford Woolen Mills, Inc. alleged to be of the value of one hundred ninety-two dollars and twenty cents ($192.20), a felony under R.S. ch. 132, § 1 (1954).[1] At his arraign-

---

1. R.S. ch. 132, § 1 (1954) provided in pertinent part as follows:

   Whoever steals, takes and carries away, of the property of another, money, goods or chattels, or ... is guilty of larceny; and shall be punished, when the value of the property exceeds $100, by imprisonment for not less than 1 year nor more than 5 years; and when the value of the property does not exceed $100, by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both such fine and imprisonment.

ment in March, 1962, Vainio pleaded guilty to the charge and was sentenced to the Men's Reformatory. The execution of the sentence was suspended, however, and he was placed on probation for the period of two years. A special condition of probation consisted in making restitution in the sum of ninety-six dollars and twenty cents ($96.20). Vainio entered his guilty plea to the alleged felony without the assistance of counsel, the printed record form indicating

"Respondent inquired of if he wished Counsel, REPLY: No."

The record does show that Vainio was discharged from probation in March, 1964. That conviction has never been vacated, nor has the defendant ever been pardoned in connection therewith, nor did he obtain a permit from the Commissioner of Public Safety to possess or have under his control a firearm pursuant to 15 M.R.S.A. § 393.

On January 4, 1982, Vainio was indicted for having in his possession or under his control on or about December 31, 1981, a firearm, the accusation further charging that he had been convicted on March 16, 1962, of the crime of larceny, a felony under the laws of the State of Maine punishable by one year or more imprisonment, all in violation of 15 M.R.S.A. § 393.[2] The evidence at trial did indicate, and Vainio did not deny, that on the alleged occasion he did have in his possession two firearms, a .357 Magnum and a .270 Browning rifle. Defense counsel at trial sought to attack the validity of Vainio's 1962 theft convic-

tion, but the trial justice would not permit it.

*Applicability of 15 M.R.S.A. § 393*

The defendant contends on appeal that, although his 1962 theft conviction was at the time punishable by one year or more imprisonment, it does not come within the scope of the prohibition created by 15 M.R.S.A. § 393. He asserts that, when the Legislature enacted in 1977 the current section 393 prohibiting ownership, possession or control of any firearm to any person

who has been convicted of any crime, under the laws of the United States, the State of Maine or any other state, which is punishable by one year or more imprisonment . . .,

it was referring to convictions which under the punishment classifications of the Maine Criminal Code effective May 1, 1976, are punishable by one year or more imprisonment.[3] Since his 1962 theft conviction involved property valued at less than $500, Vainio argues that he had not been convicted of a crime under the laws of the State of Maine which is punishable by one year or more imprisonment within the scope of the present section 393. We disagree.

At the time of the defendant's underlying conviction of theft, the law regulating the possession of firearms made illegal the possession by convicted felons of *concealable* firearms, except that it did not apply to any person who had not been subsequently convicted of a penal offense dur-

---

In 1961, every offense punishable by imprisonment in the state prison was a felony. R.S. ch. 145, § 1 (1954).

Also, unless otherwise specially provided, all imprisonments for 1 year or more had to be in the state prison. R.S. ch. 149, § 4 (1954).

**2.** The indictment contained two other counts, one for attempted aggravated assault, a Class C crime, 17–A M.R.S.A. §§ 152, 208, the other for criminal threatening with a firearm, a Class D crime, 17–A M.R.S.A. § 209. At trial, Vainio's motion for judgment of acquittal was granted respecting the charge of attempted aggravated assault, and the jury found him not guilty of the offense of criminal threatening with a firearm.

**3.** 17–A M.R.S.A. § 362 of the Maine Criminal Code provides as follows:

*Classification of theft offenses*

1. All violations of this chapter [the chapter on theft] shall be classified, for sentencing purposes, according to this section.

. . . .

5. Theft is a Class E crime if the value of the property or services does not exceed $500. 17–A M.R.S.A. § 1252.

*Imprisonment for crimes other than murder*

2. The court shall set the term of imprisonment as follows:

E. In the case of a Class E crime, the court shall set a definite period not to exceed 6 months.

ing the 5-year period next immediately following his discharge or release from prison. P.L. 1955, ch. 310. That statute, codified later as 15 M.R.S.A. § 393, was repealed by P.L.1977, ch. 225 § 2, which enacted in its place the current section 393, the Legislature expanding the scope of illegality to include the ownership and control as well as the possession of *any* firearm, concealable or non-concealable. The Legislature at the same time modified the terminology describing the class of persons within the prohibition from "any person who has been convicted of a felony" to "any person who has been convicted of any crime . . . which is punishable by one year or more imprisonment." This modification, however, made necessary by the adoption in the Maine Criminal Code of a new crime-classification prescript replacing the former felony-misdemeanor dichotomy, did not constitute an express rejection of the superseded proscriptions, but rather merely carried over the concept of the displaced statute to meet the Code's new concepts in crime categorization.

■■■ The starting point in any given case concerning the interpretation of a statute must be the language of the statute itself. Indeed, legislative intent oftentimes is readily ascertainable from the plain meaning of the words used in the statute. *State v. Hussey,* 381 A.2d 665, 666–67 (Me. 1978); *State v. Granville,* 336 A.2d 861, 863 (Me.1975). Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common and ordinary meaning, such as men of common intelligence would usually ascribe to them. *State v. Snow,* 383 A.2d 1385, 1388 (Me. 1978); *State v. Heald,* 382 A.2d 290, 294 (Me.1978); *State v. Shaw,* 343 A.2d 210, 213 (Me.1975). The effect of a penal statute cannot be extended or restricted beyond the plain meaning of the language chosen by the Legislature. *Davis v. State,* 306 A.2d 127, 129 (Me.1973).

■■■ An examination of the current section 393 reveals that the legislative restriction placed upon the ownership, possession or control of any firearm, concealable or nonconcealable, absent a permit from the Commissioner of Public Safety, is directed in broad and sweeping statutory language at *any* person "who has been convicted of *any* crime, under the laws of the United States, the State of Maine or any other state, which is punishable by one year or more imprisonment." Nothing on the face of the statute indicates that the past convictions to which the Legislature was referring were convictions of crimes other than crimes which *at the time of their commission in the jurisdiction where committed* carried the potential punishment by one year or more imprisonment. This is the natural import of the legislative phraseology. Any interpretation which would make the disabling character of past convictions to depend on the vagaries of subsequent legislative changes in the punitive consequences which a legislature might at a later time impose for similar conduct, would effectively destroy the uniform package which our legislators had undoubtedly in mind, when in 1977 they concluded that there was not only need for updating the existing gun control legislation in the case of convicted criminals on account of the recent adoption of the Maine Criminal Code, but also that there was a demand for greater control of firearms in the hands of that class of persons who presented a high potential of danger to the public by reason of their having been convicted of a felony or conduct which at the time was considered a serious offense. If the Legislature, in its reference to persons *who have been convicted* of crimes punishable by one year or more imprisonment, had intended that, in the case of convictions antedating the adoption of the Maine Criminal Code, the penalty criterion would have reference to the crime classifications of the Code including those for theft offenses, it would have been an easy task to have so indicated specifically. The obvious breadth of the all-inclusive language of the statute, together with the factual expansion of the statutory disability to include ownership,

possession and control of non-concealable firearms as well as concealable firearms, effectively militates against the defendant's contention that the Legislature did intend to relieve convicted felons from the imposed firearm ineligibility if their past conduct, when viewed in the light of the Maine Criminal Code penalty provisions, would not currently qualify as a felonious or serious crime. The Legislature has demonstrated that this statute was to be interpreted broadly and not constricted within narrow channels. Indeed, the same One Hundred and Eighth Legislature in 1977, (P.L.1977, ch. 564, § 72) made sure that the term "convicted" as used in 15 M.R.S.A. § 393, sub-§ 1, as enacted by P.L.1977, ch. 225, § 2, would have broad coverage, amending the statute to include the following:

> For the purposes of this subsection, a person shall be deemed to have been convicted upon the acceptance of a plea of guilty or nolo contendere or a verdict or finding of guilty by a court of competent jurisdiction.

Similarly, if the language of this subsection had been meant to be restricted by the penalty criteria of the Maine Criminal Code in respect to previous felony convictions, it could and would most probably have been done at the time of this amendment.

Hence, we hold that under the plain meaning of the statute the defendant did belong to that class of persons for whom ownership, possession or control of any firearm was prohibited, absent a permit from the Commissioner of Public Safety.

### Ex post facto law

Vainio next asserts that, prior to the enactment of the current section 393 of title 15 M.R.S.A. in 1977, it was lawful for him to possess firearms capable of being concealed upon the person after the expiration of five years from the date of the termination of probation, that is, after March, 1969.[4] He now contends that, if applicable to him, the 1977 amendment which would deprive him of an unconditional right to possess concealable firearms and compel him to apply to and secure a permit from the Commissioner of Public Safety for continued enjoyment of the privilege, would in fact inflict a punishment for past violation of law more severe than was prescribed for the criminal offense of which he had been convicted or would deprive him of some protection to which he had become entitled. This additional deprivation of personal prerogative, Vainio claims, violates both the Constitutions of the State of Maine and of the United States which proscribe *ex post facto* laws. *See* Me. Const. art. I, § 11 and U.S. Const. art. I, § 10.

In *State v. Myrick,* 436 A.2d 379 (Me. 1981), this Court dealt with this issue in similar circumstances. After adopting the test articulated in *Cases v. United States,* 131 F.2d 916 (1st Cir.1942), the *Myrick* Court determined that the 1977 amendment was enacted "to lessen 'a high potential of danger to the public' and to reduce the 'probability that the convicted individual would continue his criminal activity.' The Legislature could justifiably conclude there was a need for [more] gun control legislation in the case of convicted criminals" (quoting *State v. Heald,* 382 A.2d 290, 295 (Me.1978)). This Court then decided that the current section 393 was not enacted for the purpose of imposing an additional penalty for past conduct, but rather was de-

4. 15 M.R.S.A. § 393 then read as follows:

It shall be unlawful for any person who has been convicted of a felony under the laws of the United States or of the State of Maine, or of any other state, to have in his possession any pistol, revolver or any other firearm capable of being concealed upon the person *until the expiration of 5 years from the date of his discharge or release from prison or termination of probation.* Such a person convicted of any offense, except misdemeanors, the maximum punishment for which is a fine of $100 or less, or imprisonment for 90 days or less, during the 5-year period, shall be forever barred from having in his actual or constructive possession any of the weapons described herein. Anyone violating any of the provisions of this chapter shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment for not less than one nor more than 5 years. (Emphasis supplied).

signed to regulate more closely the ownership, possession and control of firearms by those who, because of prior convictions of crimes punishable by a year or more imprisonment, had demonstrated their unfitness to be entrusted with dangerous weapons.

■ We conclude again, as we did in *Myrick,* that the current section 393 does not implicate the constitutional *ex post facto* prohibition, since there does exist a sufficiently rational connection between a defendant's past conviction of crime punishable by imprisonment for a period of a year or more and the legislative purpose in the present law to protect the public against the indiscriminate use of firearms by such class of convicted persons; nor does the present statute deprive the defendant of some protection to which he was constitutionally entitled.

### Collateral Attack

Lastly, Vainio argues that, in the face of a silent record where no evidence appears to demonstrate that in 1962 he knowingly, intelligently and voluntarily waived his constitutional right to the assistance of counsel before entering his guilty plea to the charge of larceny, his present conviction of possession or control of a firearm by a person convicted of a crime punishable by a year or more imprisonment cannot stand and must be reversed. We disagree.

■ This brings up the issue, whether the underlying 1962 conviction of theft could be collaterally attacked by Vainio in the present prosecution for alleged unlawful possession of a firearm. In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the United States Supreme Court addressed an issue very similar to the one presented in the instant case. In 1961, Lewis had been convicted of a felony based upon a plea of guilty. In 1977, he was convicted of knowingly receiving and possessing a firearm by a felon. Lewis argued that he was not represented by counsel when he pleaded guilty to the 1961 felony which forms the basis of his subsequent conviction. 445 U.S. at 56–58, 100 S.Ct. at 916–17, 63 L.Ed.2d at 204. He based his attack on both statutory and constitutional grounds. 445 U.S. at 60, 100 S.Ct. at 918, 63 L.Ed.2d at 206. The Court determined that the statute itself did not expressly give a defendant the right to question collaterally the validity of the underlying conviction on constitutional grounds as a defense to the charge of possession of a firearm by a criminal defendant. 445 U.S. at 65, 100 S.Ct. at 920–21, 63 L.Ed.2d at 209. Addressing the constitutional challenge, the Court noted that it had never suggested that an uncounseled conviction was invalid for all purposes.[5] 445

5. The Court recognized that in several cases it had found unconstitutional the use of uncounseled felony convictions for certain purposes. *Lewis,* 445 U.S. at 59–60, 66, 100 S.Ct. at 918, 921, 63 L.Ed.2d at 205–06, 210. The Court indicated that in *Burgett v. State of Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), it held that a constitutionally invalid uncounseled conviction could not be used as a prior conviction for the purposes of a recidivist statute that operated to enhance a jail sentence; also, in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), that such a conviction could not be considered by a judge when sentencing a defendant for a subsequent conviction; and in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), that such a conviction could not be used to impeach a defendant's credibility. *Lewis,* 445 U.S. at 59–60, 100 S.Ct. at 918, 63 L.Ed.2d at 205–06. The *Lewis* Court distinguished these cases from the current case on the following grounds:

In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.[9] Enforcement of that essentially civil disability through a criminal sanction does not "support guilt or enhance punishment," see *Burgett,* 389 U.S. at 115, 19 L.Ed.2d 319, 88 S.Ct. 258, on the basis of a conviction that is unreliable when one considers Congress' broad purpose. Moreover, unlike the situation in

U.S. at 66–67, 100 S.Ct. at 921–22, 63 L.Ed.2d at 210. The Court held that the "firearms prosecution does not open the predicate conviction to a new form of collateral attack."[6] 445 U.S. at 67, 100 S.Ct. at 922, 63 L.Ed.2d at 211. We agree with the principles set forth in *Lewis*. We hold that a person charged with possession of firearms prohibited under 15 M.R.S.A. § 393 for persons convicted of crimes punishable by one year or more imprisonment cannot collaterally attack the underlying conviction which serves as a basis for the firearm prosecution, and that in such circumstances there is no violation of the United States Constitution, nor of the State Constitution.[7]

Our position is consistent with our holdings in a number of cases. In *Beaulieu v. State*, 161 Me. 248, 211 A.2d 290 (1965), the defendant attempted to attack his escape conviction on the basis that he was unlawfully imprisoned for the underlying larceny conviction which he was serving in the reformatory and which had been obtained against him without the benefit of the assistance of counsel. Although we decided the case on procedural grounds, we stated that the results would be unchanged even if the merits had been addressed. *Beaulieu*, 161 Me. at 250, 211 A.2d at 291. We held that a judgment may only be voided in a proceeding directed to the larceny conviction, not to the escape conviction. 161 Me. at 253–54, 211 A.2d at 293. This holding on

the merits has been followed in several later cases. *State v. Perkins*, 277 A.2d 501 (Me.1971); *Chapman v. State*, 250 A.2d 696, 697 (Me.1969); *Hamner v. State*, 223 A.2d 532, 534–35 (Me.1966); *see also Fuller v. State*, 282 A.2d 848, 850 (Me.1971) (involving an assault upon a guard at the Correctional Center).

The denial to a criminal defendant of collateral attacks upon a conviction has been applied in contexts other than escape. In *State v. Higgins*, 338 A.2d 159 (Me.1975), the defendant was convicted of operating a motor vehicle after suspension. On appeal, he attacked the suspension on constitutional grounds. We did not allow such a collateral attack, reasoning that public policy favoring "respect for law" must be held to overbalance a citizen's interest to vindicate rights, even if constitutionally rooted, by a collateral attack initiated by the citizen's resort to "self-help" conduct having independent criminal consequences. 338 A.2d at 162; *see also State v. Albert*, 418 A.2d 190 (Me.1980).

Most recently, in *State v. Piacitelli*, 449 A.2d 1126 (Me.1982), the defendant appealed his conviction of operating a motor vehicle after revocation of a license under the habitual offender law and sought to attack the underlying suspension on the basis that it was constitutionally invalid. Relying upon Higgins, we refused to permit such collateral attacks made after resorting to

Burgett, the sanction imposed by § 1202(a)(1) attaches immediately upon the defendant's first conviction. [Footnote omitted.]
*Lewis*, 445 U.S. at 67, 100 S.Ct. at 922, 63 L.Ed.2d at 210.
Most recently, in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam), the Court held that an uncounseled misdemeanor conviction, though constitutionally valid, could not be used as a predicate conviction under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. The distinction of *Burgett, Tucker,* and *Loper* that the *Lewis* Court made also serves to distinguish *Baldasar*.

**6.** The *Lewis* decision has received much criticism, especially from the dissenters. *Lewis*, 445 U.S. at 68, 100 S.Ct. at 922, 63 L.Ed.2d at

211 (Brennan, Marshall, Powell, JJ., dissenting). Commentators call *Lewis* an "aberration." Comment, *Constitutional Law: Sixth Amendment—Right to Counsel—Use of Prior Uncounseled Convictions*, 14 Akron L.Rev. 155 (1980); Note, *Sixth Amendment Limits on Collateral Uses of Uncounseled Convictions*, 91 Yale L.J. 1000–17 (1982).

**7.** In *Poitraw v. State*, 322 A.2d 594 (Me.1974), the Court considered whether to permit a collateral attack upon a felony conviction which was the basis of a conviction for possession of a firearm by a felon. Denying the appeal on other grounds, the Court in a footnote stated that it did not intimate any opinion upon whether the petitioner could collaterally attack his prior conviction. 322 A.2d 598 n. 6.

# 478

self-help. *Piacitelli,* 449 A.2d at 1128. Thus, we have consistently disallowed collateral attacks on outstanding underlying adjudications, though based upon constitutional grounds, in cases involving motor vehicle offenses.

■ We, however, have permitted a collateral attack upon a prior conviction, where that conviction formed the basis of an enhanced sentence under a recidivist statute. In *Green v. State,* 237 A.2d 409 (Me.1968), the petitioner collaterally attacked an uncounseled robbery conviction that was used pursuant to a recidivist statute to enhance the sentence imposed for a larceny conviction. We held that the robbery conviction was invalid. 237 A.2d 412. Distinguishing *Beaulieu,* we reasoned that the sentence Green was serving was directly attributable to the enhancement of the sentence by application of the recidivist statute. *Green,* 237 A.2d at 411; *see Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam); *Burgett v. State of Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). That rationale also serves to distinguish *Green* from this case. In addition, *Green* is distinguishable because the Legislature may rationally seek to prohibit certain convicted persons, even though their prior conviction may be determined on appeal to be invalid, from possessing firearms because of the danger which may be associated with possession of firearms by convicted persons. *See Lewis,* 445 U.S. at 67, 100 S.Ct. at 922, 63 L.Ed.2d at 210; *State v. Heald,* 382 A.2d 290, 294–95 (Me.1978).

We hold, therefore, that under the Maine Constitution a defendant is not entitled to pursue a collateral attack on an underlying unreversed conviction which forms the basis for prosecution under section 393.

The entry is:

Judgment affirmed.

All concurring.