2012 ME 39

**STATE of Maine**

v.

**Frank C. JOHNSON.**

Supreme Judicial Court of Maine.

Argued: Dec. 12, 2011.
Decided: March 22, 2012.

Aaron M. Frey, Esq. (orally), Bangor, for appellant Frank Johnson.

R. Christopher Almy, District Attorney, and Susan J. Pope, Asst. Dist. Atty. (oral-ly), Prosecutorial District V, Bangor, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] This appeal concerns the scope of a criminal defendant's right to collaterally attack a prior conviction used to support an enhanced charge or sentence in a subsequent prosecution. The defendant, Frank C. Johnson, appeals from a judgment of conviction for operating after habitual offender revocation (Class C), 29–A M.R.S. § 2557–A(1)(A), (2)(B) (2011), entered in the Superior Court (Penobscot County, *R. Murray, J.*),[1] following his conditional guilty plea pursuant to M.R.Crim. P. 11. Johnson argues that the court (*Anderson, J.*) erred in denying his motion to strike a 2007 conviction offered by the State to enhance his current charge to a Class C crime. Because we determine that Johnson did not have the right to collaterally attack the 2007 conviction, we affirm the judgment.

## I. BACKGROUND

[¶ 2] On June 22, 2009, Johnson was indicted for operating after habitual offender revocation (Class C), 29–A M.R.S. § 2557–A(1)(A), (2)(B).[2] As the basis for enhancing the charge from a Class D to a Class C offense, the indictment alleged that on March 6, 2007, Johnson had been

---

1. The Bangor Unified Criminal Docket was created while Johnson's case was pending in the Penobscot County Superior Court. *See* Establishment of the Bangor Unified Criminal Docket, Me. Admin. Order JB–10–1 (effective Jan. 4, 2010). The docket sheet reflects that Johnson's case technically remained in the Superior Court.

2. Title 29–A M.R.S. § 2557–A(2)(B) (2011) states, in relevant part:

 **B.** A person is guilty of a Class C crime if the person violates subsection 1 and:
 **(1)** The person has one conviction for operating after revocation under this section or under former Title 29, section 2298 within the previous 10 years; or
 **(2)** The person has one OUI conviction within the previous 10 years.

convicted of operating under the influence of intoxicants, 29–A M.R.S. § 2411(1–A)(A) (2007).[3]

[¶ 3] After pleading not guilty, Johnson filed a motion to strike the 2007 conviction, contending that it was imposed illegally because it was based on a guilty plea that he alleged was not knowing and voluntary. He asserted that he had not been informed pursuant to M.R.Crim. P. 5 of important constitutional rights before he entered the guilty plea at the 2007 proceedings. Initially, the State agreed to amend the indictment so as to remove the allegation of the prior conviction, and Johnson pleaded guilty to operating after habitual offender revocation (Class D), 29–A M.R.S. § 2557–A(1)(A), (2)(A). A short time later, however, Johnson withdrew his guilty plea pursuant to M.R.Crim. P. 32(d), and renewed his motion to strike.

[¶ 4] In May 2010, the court (Anderson, J.) held a hearing on Johnson's motion. The court admitted a transcript of Johnson's 2007 arraignment and received testimony from the court-appointed "lawyer for the day" who had represented Johnson. The court subsequently entered an order denying the motion to strike,

finding that Johnson had been informed of the rights enumerated in M.R.Crim. P. 5 at the arraignment, and determining that the 2007 guilty plea was constitutionally valid. Johnson then entered a conditional guilty plea to the Class C charge of operating after habitual offender revocation, and the court (R.Murray, J.) entered a judgment of conviction on that plea. See M.R.Crim. P. 11(a)(2). The court sentenced Johnson to seven months in jail and a fine of $1000. Johnson then brought this appeal.

## II. DISCUSSION

[¶ 5] Johnson contends that the court (Anderson, J.) erred in failing to strike his 2007 OUI conviction because the underlying guilty plea was not based on an effective waiver of his constitutional rights and therefore could not serve as the predicate offense for the Class C charge of operating after habitual offender revocation, 29–A M.R.S. § 2557–A(1)(A), (2)(B). He contends that his waiver of constitutional rights was not effective because the trial court failed to inform him of all the prescribed elements of M.R.Crim. P. 5(b) and (c).[4] Specifically, Johnson asserts that the

---

3. Title 29–A M.R.S. § 2411(1–A)(A) has since been amended. P.L.2009, ch. 447, § 37 (effective Sept. 12, 2009).

4. M.R.Crim. P. 5(b) and (c) provide:
 (b) **Initial Statement by the District Court Judge.** When a person arrested, either under a warrant issued upon a complaint filed in the District Court or without a warrant, is brought before a District Court judge, or a person who has been summonsed appears before a District Court judge in response to a summons, the District Court judge, in open court, shall, unless waived by the person or the person's counsel:
 (1) inform the person of the substance of the charges against the person;
 (2) inform the person of the person's right to retain counsel, and to request the

assignment of counsel, and that the person may be allowed a reasonable time and opportunity to consult counsel before entering a plea;
 (3) inform the person that the person is not required to make a statement and that any statement made by the person may be used against the person; and
 (4) admit the person to bail as provided by law.
 (c) **Further Statement by the District Court Judge Before Calling Upon the Person to Plead.** In addition to the statements in subsection (b) of this Rule, before calling upon the person to plead, the District Court judge shall inform the person of:
 (1) the maximum penalties and any applicable mandatory minimum penalties;

waiver of his constitutional rights was not effective because the record of the 2007 proceedings does not demonstrate that the trial court confirmed that he was present for the mass instruction, informed him of his right to remain silent or his right to trial by jury, or informed him of the maximum penalties he could receive if convicted and his duty to immediately pay any fine imposed. He also asserts that the record does not reflect that the lawyer for the day had explained to him the minimum and maximum penalties that he faced if convicted; that he had the right to remain silent; that he had the right to counsel; and that he had a duty to immediately pay any fine imposed.

[¶ 6] As Johnson concedes, he cannot prevail in this appeal unless we first accept the premise that, within the context of trial proceedings on a subsequent offense, a defendant may collaterally attack a prior conviction resulting from a guilty plea that is allegedly constitutionally flawed. After examining relevant federal and state precedent, we conclude that a criminal defendant may not collaterally attack a prior conviction during proceedings related to a different offense, unless the defendant alleges a violation of the Sixth Amendment right to counsel.

## A. Federal Law

[¶ 7] We begin by examining relevant federal authority. In a series of decisions, the United States Supreme Court has ad-

dressed the propriety of using allegedly unconstitutional convictions in subsequent criminal proceedings. In *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Court held that predicate convictions obtained in violation of the right to counsel as recognized in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), cannot be used "against a person either to support guilt or enhance punishment for another offense." [5] Similarly, in *United States v. Tucker,* 404 U.S. 443, 447–49, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court held that uncounseled convictions in violation of *Gideon* could not be considered for sentencing purposes.

[¶ 8] In *Custis v. United States,* 511 U.S. 485, 487, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the Supreme Court solidified earlier precedent by holding that, as a matter of federal constitutional law, a criminal defendant may collaterally attack an earlier conviction used to enhance a new sentence only on the basis that the defendant was deprived of the fundamental right to counsel guaranteed by the Sixth Amendment. In *Custis,* the Court addressed whether a defendant sentenced under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C.S. § 924(e) (Lexis-Nexis 2011), could collaterally attack the validity of previous state convictions used to enhance his federal sentence, on the basis that his appointed counsel was inef-

---

(2) the person's right to trial by jury and of the necessity of a demand for jury trial in accordance with these Rules; and

(3) the duty placed on the person by 14 M.R.S. § 3141(3) of immediate payment in full of any fine imposed by the court if convicted of the charges against that person.

A person charged with a Class D or Class E crime shall be called upon to plead unless that person has requested a reasonable time and opportunity to consult with counsel.

5. In *Gideon v. Wainwright,* 372 U.S. 335, 342, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that the right to counsel guaranteed by the Sixth Amendment to the United States Constitution extends to state criminal prosecutions through the Fourteenth Amendment. We have held that "[t]he right to counsel afforded by article I, section 6 of the Maine Constitution is commensurate with that of the Sixth Amendment of the federal constitution." *State v. Watson,* 2006 ME 80, ¶ 14, 900 A.2d 702.

fective, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a trial on stipulated facts. 511 U.S. at 496, 114 S.Ct. 1732. The Court held that, except for convictions obtained in violation of the right to counsel as recognized in *Gideon*, the defendant had no right under the ACCA or the United States Constitution "to collaterally attack prior convictions" in the course of his federal sentencing proceeding. *Id.* at 487, 496, 114 S.Ct. 1732. The Court stated:

> Custis invites us to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*. We decline to do so. We think that since the decision in *Johnson v. Zerbst* [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)] more than half a century ago, and running through our decisions in *Burgett* and *Tucker*, there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Id.* at 496, 114 S.Ct. 1732.

[¶ 9] The special status afforded the right to counsel derives from the principle that " '[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.' " *Id.* at 494–95, 114 S.Ct. 1732 (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). The Court recognized that there is "a historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique." *Id.* at 494, 114 S.Ct. 1732. The Sixth Amendment right to counsel, which was made binding on the States through the Fourteenth Amendment, is among the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Gideon*, 372 U.S. at 341, 343–44, 83 S.Ct. 792 (quotation marks omitted).

[¶ 10] The rule to be drawn from *Custis* is this: within the context of a subsequent prosecution, the only federally recognized basis for a collateral attack on a prior conviction is a denial of the *Gideon* right to counsel.[6] This principle applies to preclude collateral attacks on prior convictions for any other reason, whether they form an element of the crime charged or are used to enhance a sentence. *See United States v. Zarate–Martinez*, 133 F.3d 1194, 1199 (9th Cir.1998) ("*Custis* dealt only with the use of state convictions for sentence enhancement, but by analogy its reasoning extends to the similar use of prior convictions to establish guilt.").

## B. Maine Law and Other State Court Precedents

[¶ 11] Our decisions have been generally consistent with United States Supreme

---

**6.** The Court has since applied *Custis* in two cases holding that federal habeas relief is not generally available to petitioners who challenge a fully expired conviction used to enhance a subsequent sentence. In *Daniels v. United States*, 532 U.S. 374, 376, 382–83, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the Court held that a federal prisoner could not "challenge his federal sentence through a motion under 28 U.S.C. § 2255 ... on the [non-*Gideon*] ground that his prior convictions were unconstitutionally obtained." That same term, the Court extended the *Custis* holding to state prisoners seeking to challenge enhanced state sentences pursuant to 28 U.S.C. § 2254. *See Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 396, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001).

Court precedent regarding collateral challenges to prior convictions. For example, in *State v. Vainio*, 466 A.2d 471, 472, 476 (Me.1983), we addressed whether a defendant's 1962 felony conviction could be challenged in a 1982 prosecution for unlawful possession of a firearm. In rejecting the defendant's collateral attack on the 1962 conviction, we relied on *Lewis v. United States*, 445 U.S. 55, 65–68, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), in which the Supreme Court affirmed a comparable federal conviction for unlawful possession of a firearm, despite assuming that the underlying state conviction was constitutionally invalid. *Vainio*, 466 A.2d at 476–77. Expressing our "agree[ment] with the principles set forth in *Lewis*," we held that "a person charged with possession of firearms prohibited under 15 M.R.S.A. § 393 … cannot collaterally attack the underlying conviction which serves as a basis for the firearm prosecution, and that in such circumstances there is no violation of the United States Constitution, nor of the State Constitution." *Vainio*, 466 A.2d at 477. Both *Vainio* and *Lewis* predated *Custis*, and we noted in *Vainio* that *Lewis* distinguished firearms offenses from other enhancements based on uncounseled convictions because firearms laws "focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." 466 A.2d at 476 n. 5 (quoting *Lewis*, U.S. at 67, 100 S.Ct. 915).

[¶ 12] Our case law has also tracked the Supreme Court's developing jurisprudence regarding whether uncounseled misdemeanor convictions may be used to enhance punishment in subsequent prosecutions. *Compare Nichols v. United States*, 511 U.S. 738, 748–49, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (overruling *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), and holding that an uncounseled but constitutional misdemeanor conviction could be used to enhance punishment for a subsequent conviction), *with State v. Cook*, 1998 ME 40, ¶¶ 2, 11–12, 706 A.2d 603 (adopting *Nichols* and overruling *State v. Dowd*, 478 A.2d 671 (1984), which had previously adopted *Baldasar* ).

[¶ 13] We recently decided a case procedurally similar to the one now before us. In *State v. Galarneau*, 2011 ME 60, 20 A.3d 99, we addressed a defendant's collateral challenge to a 2008 OUI conviction used to support an enhanced Class C charge of operating after habitual offender revocation, 29–A M.R.S. § 2557–A(1)(A), (2)(B). As the basis for his collateral attack, the defendant argued that his 2008 conviction was unconstitutional because his representation by the "lawyer for the day" amounted to a denial of the right to counsel and because the court did not inform him of his right to counsel. *Galarneau*, 2011 ME 60, ¶ 1, 20 A.3d 99. Addressing the merits of the collateral attack, we concluded that the defendant's 2008 conviction was constitutional because his representation by the lawyer for the day satisfied the right to counsel. *Id.* ¶¶ 7–10. Although we did not discuss the issue, Galarneau's *Gideon*-based collateral attack, which was ultimately unsuccessful, would have been allowed under *Custis*.

[¶ 14] Beyond Maine, the majority of state supreme courts that have faced this question have concluded that the reasoning of *Custis* is sound. They have concluded that the right to collaterally attack a conviction that will enhance a new charge or sentence should be, for solid constitutional and policy reasons, limited to a claim that the defendant was deprived of the fundamental Sixth Amendment right to counsel.[7]

---

7. At least eleven states have adopted, expressly or implicitly, the *Custis* framework. *See*

## C. Analysis

[¶ 15] In this case, Johnson does not claim that he was denied the right to counsel. Indeed, he was represented by a court-appointed lawyer for the day when he pleaded guilty in 2007 to operating under the influence (OUI), 29–A M.R.S. § 2411(1–A)(A). Rather, he seeks to avoid having that conviction—for which he neither sought appellate review nor petitioned for post-conviction relief, and which is therefore a final judgment—used against him because, he now claims, when he entered his plea he was not advised of all of the rights and information required by M.R.Crim. P. 5. It is true that Johnson does not seek to vacate, modify, or otherwise disturb his underlying conviction. Nonetheless, allowing him the opportunity to collaterally attack its constitutionality would afford him the opportunity to effectively nullify the conviction as it relates to the crime for which he is presently charged.

[¶ 16] No less important is what Johnson does not assert. He does not contend that he would not have pleaded guilty if he had been more fully informed of his rights, or that he would have been acquitted had he elected to exercise his right to a trial. The only prejudice Johnson alleges is "the continued use of a conviction obtained from a plea entered by a Defendant[ ] who … was not made fully aware of his constitutional rights."

[¶ 17] For two reasons—the first based on the exclusivity of post-conviction review and the second resting on established public policy regarding the finality of criminal judgments—we conclude that the right to collaterally attack a prior conviction on the basis of the denial of the right to counsel should not extend to other alleged constitutional violations.

*Camp v. State*, 364 Ark. 459, 221 S.W.3d 365, 369–70 (2006); *State v. Veikoso*, 102 Hawai'i 219, 74 P.3d 575, 582 (2003); *State v. Weber*, 140 Idaho 89, 90 P.3d 314, 319–20 (2004); *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042, 1049 (1995); *McGuire v. Commonwealth*, 885 S.W.2d 931, 937 (Ky.1994); *People v. Carpentier*, 446 Mich. 19, 521 N.W.2d 195, 199–200 (1994); *State v. Weeks*, 141 N.H. 248, 681 A.2d 86, 89–90 (1996); *State v. Mund*, 1999 ND 90, ¶¶ 8–10, 593 N.W.2d 760; *State v. Hahn*, 2000 WI 118, ¶ 28, 238 Wis.2d 889, 618 N.W.2d 528; *see also People v. Padilla*, 907 P.2d 601, 606 (Colo.1995) (applying the *Custis* restriction as a matter of federal constitutional law in the discretionary sentencing context, as opposed to in the context of mandatory sentencing enhancements); *State v. Boskind*, 174 Vt. 184, 807 A.2d 358, 360, 362–64 (2002) (discussing *Custis* and holding that, when not based on a violation of the right to counsel, collateral challenges to a prior conviction used to enhance a sentence may not be brought during sentencing proceedings, but may be brought in a post-conviction proceeding based on the enhanced sentence). Only two states appear to have expressly rejected *Custis* and allowed an expansion of the right to collaterally attack a prior conviction. *See State v. Maine*, 2011 MT 90, ¶¶ 30–31, 360 Mont. 182, 255 P.3d 64; *People v. Allen*, 21 Cal.4th 424, 87 Cal.Rptr.2d 682, 981 P.2d 525, 535–37 (1999); *see also Paschall v. State*, 116 Nev. 911, 8 P.3d 851, 852 n. 2 (2000) (neither accepting nor rejecting *Custis*, but noting that it is not bound by that decision and declining to adopt a strict limitation on collateral attacks). A handful of additional states allow collateral attacks beyond the right to counsel, but have not expressly addressed the *Custis* reasoning. *See, e.g., State v. Balsano*, 11 So.3d 475, 479, 482 (La.2009) (allowing collateral attack for deficient plea proceeding, upon showing that plea was involuntary); *Nash v. State*, 271 Ga. 281, 519 S.E.2d 893, 896 (1999) (permitting collateral attack based on counseled but allegedly deficient guilty plea); *Commonwealth v. Lopez*, 426 Mass. 657, 690 N.E.2d 809, 814 (1998) (allowing collateral attack based on allegedly deficient plea proceeding, provided defendant meets initial burden of rebutting presumption of regularity attached to final judgment of conviction); *State v. Moeller*, 511 N.W.2d 803, 809–10 (S.D.1994) (permitting collateral attack based on invalid guilty plea).

[¶ 18] First and foremost, post-conviction review is, with the exception of direct appeals, "the exclusive method of review of . . . criminal judgments." 15 M.R.S. § 2122 (2011). As we recently recognized in *State v. Ali*, our precedents applying the post-conviction review statute

> uniformly hold that when a direct appeal is not available, post-conviction review is "the exclusive method of review of those criminal judgments." 15 M.R.S. § 2122 (2010); *see State v. Trott*, 2004 ME 15, ¶¶ 5, 13, 841 A.2d 789 (concluding that post-conviction review in the Superior Court is the proper forum for a claim of ineffective assistance of counsel); *see also Aldus v. State*, 2000 ME 47, ¶ 11, 748 A.2d 463 (considering on appeal an ineffective assistance of counsel claim brought by a noncitizen facing deportation using the post-conviction review procedure).

2011 ME 122, ¶ 20, 32 A.3d 1019.

[¶ 19] The post-conviction review statute, as supplemented by M.R.Crim. P. 65–75A, establishes a detailed process for post-conviction review, addressing matters as fundamental as the requirements for jurisdiction and venue over such petitions, 15 M.R.S. §§ 2123–2124 (2011), the exhaustion of remedies, *id.* § 2126, filing deadlines,[8] *id.* § 2128, the available relief, *id.* § 2130, and discretionary appellate review, *id.* § 2131. All of these provisions would be for naught if we were to permit Johnson to challenge his prior OUI conviction by way of a motion to strike in a subsequent criminal prosecution in lieu of the exclusive post-conviction review process.[9]

[¶ 20] In addition, sound public policy supports restricting the process for Johnson's constitutional challenge to post-conviction review. A rational system of criminal justice necessarily favors a process in which criminal cases are completed in a predictable and timely manner. As the Supreme Court has noted:

> [A] defendant generally has ample opportunity to obtain constitutional review of a state conviction. But once the door to such review has been closed by the defendant *himself*—either because he failed to pursue otherwise available remedies or because he failed to prove a constitutional violation—the conviction becomes final and the defendant is not entitled to another bite at the apple simply because that conviction is later used to enhance another sentence.

*Daniels*, 532 U.S. at 383, 121 S.Ct. 1578 (quotation marks and citations omitted).

[¶ 21] Accordingly, our criminal procedure must be crafted with an eye toward giving offenders the incentive not to delay in exercising their rights to appellate and post-conviction review. As the Vermont Supreme Court explained in *State v. Boskind*:

> [E]arly challenges to convictions ought to be encouraged. We fail to see how the defendant, judicial administration, or justice are served by a system that provides incentives for defendants . . . to ignore alleged constitutional violations at the time they take place in the belief that some tactical advantage may be

---

8. Whether the one-year period for seeking post-conviction review and the other limitations on the availability of post-conviction review imposed by the statute satisfy federal or state constitutional requirements is not raised by this case and, therefore, does not factor in our decision.

9. The use of Johnson's prior OUI conviction to enhance the severity of the habitual offender charge qualifies as a "present indirect impediment" for which Johnson may seek post-conviction review. *See* 15 M.R.S. § 2124(3) (2011).

gained by challenging a conviction remote in time.

174 Vt. 184, 807 A.2d 358, 365 (2002). Allowing a collateral attack in cases like Johnson's would provide convicted defendants an incentive to forego a timely appeal or petition for post-conviction review, knowing that they will never lose the ability to challenge the validity of the conviction if, in the future, it is relied upon by the State to enhance a new criminal charge.

[¶ 22] Further, permitting collateral attacks on bases other than the Sixth Amendment right to counsel would introduce chronic uncertainty as to the status of an offender's prior convictions, to the detriment of the victims of crime. *See Ngo v. State*, 2008 ME 71, ¶ 15, 946 A.2d 424 (noting the public interest in "providing closure for injured victims"). The "presumption of regularity that attaches to final judgments" is "deeply rooted in our jurisprudence," *Daniels*, 532 U.S. at 381, 121 S.Ct. 1578 (quotation marks omitted), and is based on the legitimate state interest in protecting the finality of judgments, *Ngo*, 2008 ME 71, ¶ 15, 946 A.2d 424. Expanding the opportunity for collateral challenges to prior convictions on non-*Gideon* grounds, outside the recognized avenues of direct appeal and post-conviction review, would undermine the finality of criminal judgments and with it, the public's confidence in the integrity of criminal convictions. The Supreme Court recognized this very point in *Custis:* "[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice." 511 U.S. at 497, 114 S.Ct. 1732 (quotation marks omitted); *see also State v. Moeller,* 511 N.W.2d 803, 808 (S.D.1994) (observing that collateral attacks undermine the public's "confidence in the integrity of court procedures").

[¶ 23] For these reasons, we hold that a defendant whose criminal charge or sentence is subject to enhancement because of a prior conviction may not, in the current prosecution, collaterally attack the prior conviction by seeking to strike the prior conviction based upon a claim other than the deprivation of the right to counsel. Because Johnson did not assert a violation of his Sixth Amendment right to counsel as the basis for his collateral attack on his 2007 OUI conviction, his motion to strike should have been denied without further hearing.

The entry is:

Judgment affirmed.